**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                **Plaintiff,**
            v.                                                            **11-CR-0151A**

**EFRAIN HIDALGO, et al.,**

                **Defendants.**
_____

## DECISION AND ORDER

The government has filed a motion wherein it seeks an order from this Court authorizing the taking of DNA "buccal swabs from the cheek of" all of the defendants except David Tirado for the purpose of comparing each "defendant's DNA to any DNA sample obtained from the firearms, ammunition, narcotics packaging, paraphernalia, and evidence left at the scenes of various homicides and attempted murders alleged in the Superseding Indictment." Dkt. #146, p. 11, ¶ 21.

The defendants Efrain Hidalgo, Luis Medina, Sammy Ortiz and Esteban Ramos-Cruz have filed responses in opposition to the government's motion. Dkt. #s 151, 152, 153, 154.

# FACTS[1]

On August 11, 2009, a shotgun shell was found at the scene of the homicide of Eric Morrow along with spent .22 caliber casings.

On August 17, 2009, members of the City of Buffalo Police Department "recovered a loaded Savage Arms, Stevens Model 820 B pump action shotgun while at the premises located at 82 Virginia, Buffalo, New York. Present in the premises at the time were the defendants Efrain Hidalgo, Esteban Ramos-Cruz and Jordan Hidalgo.

On January 25, 2011, law enforcement officers executed a search warrant for the search of the premises located at 297 West Utica Street, Buffalo, New York and seized the following items:

    (1)    a grinder with heroin residue;

    (2)    12 boxes of .223 caliber ammunition and 7 loose rounds;

    (3)    A live .22 caliber round and a .22 caliber rifle with a sawed-off stock;

    (4)    numerous plastic baggies;

    (5)    a live .357 round ammunition;

    (6)    two live rounds of .32 caliber ammunition;

    (7)    a Winchester .30 caliber rifle;

---

[1] The facts are taken from the affidavit of AUSA Tripi, sworn to September 10, 2012 (Dkt. #146), in support of the government's motion and from the allegations set forth in the Superseding Indictment (Dkt. #87).

(8) a digital scale with heroin residue;

(9) a rent reminder to "Richie and Tom;"

(10) NYS benefits cards for Efrain Hidalgo and Wendy Hidalgo;

(11) a NYS birth certificate for Efrain Hidalgo.

At the time of the search at 297 West Utica, the defendant Thomas Rodriguez was present and arrested by law enforcement.

A 23 gauge shotgun shell was test fired from the Savage Arms, Stevens Model 820 B pump action shotgun and then microscopically examined and compared to the 12 gauge shotgun shell case recovered on August 11, 2009 at the scene of the homicide of Eric Morrow by Erie County Central Police Services ("ECCPS") Firearms Examiner Stuart Easter who concluded that the 12 gauge shotgun shell recovered on August 11, 2009 had been fired from the Savage Arms, Stevens Model 820 B pump action shotgun.

Forensic Serologist Paul Hojnacki of the ECCPS Forensic Laboratory obtained a DNA sample from the Savage Arms, Stevens Model 820 B pump action shotgun and determined that it was a "mixture of DNA from at least three unknown individuals, at least one of whom was a male individual. A one-time search of the laboratory's Local DNA Databank was performed on the DNA profile obtained from the swab of the shortened shotgun. No matching DNA profiles were found. The DNA profile is not suitable for entry into CODIS. Known samples are required for further

comparison." Dkt. #146-2, Exhibit B.

The .22 caliber semi automatic rifle and the Winchester .30 caliber rifle seized from 297 West Utica on January 25, 2011 were examined in the ECCPS Forensic Laboratory and DNA profiles were obtained from both rifles. Michelle Stratton, Forensic Biologist II, determined that one of the rifles contained "a mixture of DNA from at least four unknown individuals. The major DNA profile is that of an unknown male individual and was entered into CODIS Local (Local DNA Databank). Known buccal specimens are required for further comparison. Dkt. #146-5, Exhibit E.

Ms. Stratton also determined that the other rifle contained "a mixture of DNA from at least three unknown individuals, including at least one male individual. A one time search of the laboratory's Local DNA Databank was performed on the DNA profile obtained from the swab of the rifle (Item #5.1). No matching DNA profiles were found . . . . Known buccal specimens are required for further comparison." Dkt. #146-5, Exhibit 1 E.

**DISCUSSION AND ANALYSIS**

In addressing the issue of taking bodily physical evidence, the United States Supreme Court has stated:

> [T]he permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. at 654, 99 S.Ct. at

> 1396; *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).
>
> In most criminal cases, we strike this balance in favor of the procedures described by the Warrant Clause of the Fourth Amendment. *See United States v. Place, supra*, 462 U.S. at 701, and n. 2, 103 S.Ct. at 2641 and n. 2; *United States v. United States District Court*, 407 U.S. 297, 315, 92 S.Ct. 2125, 2135-2136, 32 L.Ed.2d 752 (1972).

*Skinner v. Railway Labor Executive's Association*, 489 U.S. 602, 619 (1989).

> When law enforcement officials undertake a search to discover evidence of criminal wrongdoing, the Fourth Amendment's requirement of reasonableness generally mandates that the officers have both probable cause and a search warrant.

United States v. Amerson, 483 F.3d 73, 80 (2d Cir.), cert. denied 552 U.S. 1042 (2007).

It is obvious that the immediate objective of the government in seeking buccal swabs from the defendants is to generate evidence for use in its criminal prosecution of the defendants. Such sample taking constitutes a search within the meaning of the Fourth Amendment. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966); *United States v. Nicolosi*, 885 F. Supp. 50, 52 (E.D.N.Y. 1995).

I find that the taking of a buccal swabs from the inside of the defendants' mouths is properly viewed as implicating their dignity interests. Because the samples taken "can provide a significant amount of genetic identity information, a personal

privacy interest of the defendants also exists. As a result, compliance with the Fourth Amendment is mandated; namely, there must be a finding of probable cause to warrant the taking of such samples. *United States v Nicolosi, supra* at 55.

The defendant Efrain Hidalgo, in objecting to the government's motion, argues "that the application and supporting exhibits fail to establish reasonable individualized suspicion that probative evidence will be found. In the alternative, [he] argues for a limiting order restricting the use of any DNA samples from the defendants (sic) to comparisons against only the mixed DNA samples obtained from the three firearms identified in the application." Dkt. #151, p. 11.

Both asserted positions of the defendant are without legal merit and are rejected.

The grand jury has found probable cause, as alleged in the Superseding Indictment, to believe that the defendant Efrain Hidalgo, along with defendants Ritchie Juarbe, Joseph Whitely, Esteban Ramos-Cruz, Jordan Hidalgo and Thomas Rodriguez, stored heroin and firearms at 82 Virginia Street, Buffalo, New York. Dkt. #87, ¶ 42. He was present at 82 Virginia Street when the Savage Arms, Stevens Model 820 pump action shotgun was recovered from that premises on August 17, 2009. The DNA profile found on this shotgun established that it is "a mixture of DNA from at least three unknown individuals, including at least one male individual." Dkt. #146-2, Exhibit B. As a result, there is a sufficient basis to warrant a finding that probable cause does exist

for the ordering of the taking of the buccal samples from him for purposes of comparing his DNA profile to that obtained from the shotgun on August 17, 2009.

The grand jury has further found that the defendant Efrain Hidalgo, along with defendants Ritchie Juarbe and Thomas Rodriguez, possessed firearms, heroin and drug paraphernalia at 297 West Utica, Buffalo, New York on or about January 25, 2011. Such possession included the .22 caliber semi automatic rifle and the Winchester .30 caliber rifle from which DNA profiles were obtained. Dkt. #87, ¶s 40, 41. This finding also provides sufficient probable cause for the ordering of the taking of a buccal sample from him for purposes of comparing such sample to the DNA profiles found on the two rifles as well as any DNA samples that may be found on the drug paraphernalia recovered from 297 West Utica, Buffalo, New York.

The defendant Luis Medina has filed an objection to the government's motion asserting that the "application is overly broad . . . for comparison to not only firearms but also drug and related evidence at issue in this action, even though the application fails to allege that DNA has been extracted from any such drug and related evidence." Dkt. #152, ¶ 18. In sum, he argues that "no individualized reasonable suspicion has ever been offered in the application as to 'drug and related evidence' in the case and that . . . any approval of the government's motion should be limited to a comparison of the defendant's DNA to only the DNA extracted from the three firearms." Dkt. #152, ¶ 18.

This Court disagrees with that argument and therefore rejects it for the following reasons.  The grand jury has found probable cause as alleged in the Superseding Indictment that Luis Medina, along with other named defendants, conspired "to distribute, distribution of, and use of premises to distribute, controlled substances, including cocaine, heroin, and marijuana."  Dkt. #87, Count 1.  The grand jury further found that the defendant Luis Medina, within the time period of the Superseding Indictment, "possessed with intent to distribute and distributed heroin in the territory controlled by the Cheko's Crew/7th Street Gang enterprise" and that he "possessed firearms in the territory controlled by the Cheko's Crew/7th Street Gang enterprise."  Dkt. #87, ¶s 54 and 55.

These findings by the grand jury warrant a finding that probable cause does exist for the ordering of the taking of a buccal sample from Luis Medina for purposes of comparing his DNA profile to those found on the weapons.  Since a "grinder with heroin residue," along with "numerous plastic baggies" and "a digital scale with heroin residue" were seized pursuant to a search warrant from 297 West Utica, Buffalo, New York on January 25, 2011, a location within the alleged "territory controlled by the Cheko's Crew/7th Street Gang enterprise," it is not unreasonable to assume that DNA profiles might be found on these seizures which could then be compared to the defendant Luis Medina's DNA profile.

The defendant Sammy Ortiz, by his attorney, objects to the taking of a buccal sample, claiming that "the government has failed to establish a reasonable

individualized suspicion that DNA profiles that implicate the defendant exist much less that any such samples are ones that implicate the defendant." The defendant also argues "that the request for DNA samples is also over broad given the specific allegations of the indictment as to the defendant." Dkt. #153, ¶ 17.

This Court disagrees with this argument as well. The grand jury has expressly found probable cause that the defendant Sammy Ortiz "sometime between August 11 and August 17, 2009" along with "Efrain Hidalgo, Esteban Ramos-Cruz and others, while armed with a firearm, sought "rival 10th Street Gang members to shoot and kill." Dkt. #87. ¶ 19, p. 20. The grand jury also found probable cause that the defendant Sammy Ortiz "possessed with intent to distribute and distributed cocaine in the territory controlled by the Checko's Crew/7th Street Gang enterprise" and that he "sold a quantity of cocaine to an individual known to the grand jury on March 20, 2012;" "sold a quantity of heroin to an individual known to the grand jury on March 21, 2012" and "on March 30, 2012;" and that he "sold a quantity of cocaine to an individual known to the grand jury on April 6, 2012." Dkt. #87, ¶s 53, 57, 58, 59, 60, pp. 29-31. These findings are sufficient to support a finding of probable cause that the defendant Ortiz may have possessed the weapons at one time which were recovered from 82 Virginia, Buffalo, New York on August 17, 2009 and 297 West Utica Street, Buffalo, New York on January 25, 2011. Further, since the grand jury has found that the defendant Ortiz was engaged in the possession and distribution of cocaine and heroin, it is reasonable to assume that DNA samples might be found on the drug paraphernalia seized from

297 West Utica, Buffalo, New York which could then be compared to the defendant Ortiz's sample of DNA.

The defendant Esteban Ramos-Cruz, by his attorney, objects to the taking of a buccal sample by asserting that the government "has made no showing that a 'reasonable individualized suspicion that probative evidence will be found' exists regarding [him]." More specifically, he claims that the "government's motion makes no connection between [him] and any 'narcotics paraphernalia and related evidence' or the rifles recovered on January 25, 2011" and that his mere presence at 82 Virginia, Buffalo, New York when the shotgun was recovered "does not provide an individualized suspicion regarding [him]." Dkt. #154, p. 2.

This argument of the defendant Ramos-Cruz ignores the express probable cause findings of the grand jury wherein it found that he, along with other named defendants, "obtained firearms for the purpose of killing rival 10th Street Gang members" on or about "August 11, 2009" and that he and defendant Jordan Hidalgo "were armed with a .22 caliber semi automatic rifle and a sawed off 12 gauge shotgun on or about August 11, 2009" and that "on or about August 11, 2009 he and Jordan Hidalgo and Juan Torres shot and killed rival 10th Street Gang Member Eric Morrow." The grand jury further found that "sometime between August 11 and August 17, 2009, Ramos-Cruz" along with "defendants Sammy Ortiz, Efrain Hidalgo and others, while armed with a firearm" sought "rival 10th Street Gang members to shoot and kill." With

respect to drug activity, the grand jury found that the defendant Ramos-Cruz was supplied heroin by Efrain Hidalgo for distribution at 66 Spruce Road, Amherst, New York during the period August 2009 to October 21, 2009; that he, along with other named defendants, "stored heroin and firearms at 82 Virginia Street, Buffalo, NY;" that during the period August 2009 to November 2009, he, along with other named defendants, "stored firearms, heroin, and prepared heroin for distribution at 216 Schiller Street, Buffalo, NY." Dkt. #87, ¶ 16, pp. 19-20, ¶ 18, p. 30, ¶ 19, p. 20, ¶ 26, p. 22, ¶ 42, pp. 26-27, ¶ 43, p. 27. These findings provide probable cause to believe that the weapons recovered from 82 Virginia Street, Buffalo, New York and 297 West Utica, Buffalo, New York may contain a DNA Match to Ramos-Cruz's DNA. The same can be said for the need to make a DNA comparison to any DNA samples that might be found on the drug paraphernalia recovered at 297 West Utica on January 25, 2011.

## **CONCLUSION**

Based on the foregoing, I find that there is sufficient probable cause to warrant the issuance of an order requiring the defendants Efrain Hidalgo, Luis Medina, Sammy Ortiz and Esteban Ramos-Cruz to provide a buccal DNA sample to the government as requested in its motion. Since the other named defendants have not opposed the government's motion seeking buccal DNA samples from them, they also are hereby ordered to provide such a sample as requested by the government in its motion since the allegations set forth in the Superseding Indictment as to these defendants provide sufficient probable cause for the taking of such samples. Therefore, it is hereby

**ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Decision and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Decision and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Decision and Order in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and

the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**


DATED:	Buffalo, New York
	November 14, 2012

>	*S/ H. Kenneth Schroeder, Jr.*
>	**H. KENNETH SCHROEDER, JR.**
>	**United States Magistrate Judge**